[No. 14433.   Department Two.   April 5, 1918.]

NELLIE KENNEDY, *Respondent*, v. FRANCES BURR, *Appellant*.[1]

EVIDENCE—DECLARATIONS AGAINST INTEREST—ADMISSIBILITY. In an action of deceit, upon an issue as to whether defendant, the executrix of an estate, had falsely represented the estate as insolvent, her report of assets to the state tax commission is competent as a declaration against interest and in rebuttal of the misrepresentations.

APPEAL—HARMLESS ERROR—EVIDENCE. It is not prejudicial to reject evidence of a memorandum which was incompetent if it had been admitted over objection.

EXECUTORS AND ADMINISTRATORS—LIABILITY—DECEIT. An executrix is liable for deceit if, by false representations that the estate was bankrupt, a claimant, in reliance thereon, failed to file a claim against the estate within the time limited by law.

SAME—LIABILITY FOR DECEIT—ACTIONS—INSTRUCTIONS. In an action against an executrix for deceit in representing the estate as bankrupt, an instruction that it was her duty to notify a claimant to file a claim against the estate, if she was negotiating for its payment, while inapt, was not prejudicial in view of the issue and an actual payment made upon the claim.

SAME—ACTIONS—DEFENSES. In such a case, a showing that the estate was incumbered did not overcome a *prima facie* case made that the estate was solvent; the burden then being on defendants to show not only incumbrances but insolvency.

Appeal from a judgment of the superior court for King county, Frater, J., entered February 6, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Corwin S. Shank* and *H. C. Belt*, for appellant.

*James R. Chambers*, for respondent.

CHADWICK, J.—This is an action for deceit.

The plaintiff is the holder of a note made by Arthur S. Burr in his lifetime. Defendant, surviving

[1]Reported in 171 Pac. 1022.

wife and sole devisee of deceased, was appointed executrix of the will of her husband, and made publication of notice to creditors on May 16, 1914.

Plaintiff and the Burrs had been friendly to the point of intimacy for several years before Mr. Burr's death. Plaintiff had loaned Burr money which he had paid back. In October, 1914, after the qualification of defendant as executrix, she paid plaintiff interest amounting to $22.50, and asked the plaintiff if she would wait for the principal, which plaintiff agreed to do, "If that would accommodate her in any way I would be glad to wait," says the plaintiff.

In the February following, plaintiff was in a hospital being treated for an injury. She asked defendant to call on her. The note was a subject of conversation. Plaintiff's version of the conversation is as follows:

"A. We talked about it. I asked her how she was fixed, how Mr. Burr left her, and if he left her in fairly good condition as to finances and she said that she was nearly crazy, that she was almost a bankrupt and that she was living on ten cent lunches a day, and I know I laughed and said that was kind of bad and let it go at that. Q. Did you or did you not believe those statements? A. I surely believed them. I would have no reason to disbelieve Mrs. Burr, because I had always found her a truthful woman. I believed it all. I was sorry for her to think she had to live on ten cent lunches a day? Q. She said she had to live on ten cent lunches a day? A. Yes, sir. Q. What effect, if any, did these statements have upon your failure to file a claim against the estate? A. I thought as long as she was so overworked that I would let it go, that she would pay me when she could, as her husband has always paid whatever he owed to me. If I had been up and around I would have looked after things better."

Defendant promised to call again. Nothing was done so plaintiff some three or four months thereafter had defendant summoned by telephone.

"Then I asked her again if she couldn't do something for me, because my hospital bills were heavy and my doctor's bill heavy, and she asked if I would take $25 a month and I said that would be better than nothing, but I could do more if I got it all in a bunch and she said 'I will write to my brother in New York and see what he will do for me.' Q. Was anything said about the estate? A. No, sir, the estate was not mentioned. I said that if it was all right I would like to have it in one sum, but she said 'I will write to my brother and let you know what I can do.'"

After the 16th of May, 1915, the time for filing claims, defendant either failed or refused to call upon, or communicate with, plaintiff in any way. Plaintiff wrote a letter saying, among other things:

"This is to let you know that I have left the hospital and am out to my friends, Miss Dixons, 6535 2nd Ave. N. E. I was very tired of the hospital and besides felt as tho must cut expenses as you know twenty-five dollars a week for fifteen weeks besides your other expenses amounts to something. Now, dear friend, I should love to have you do something for me. Under no other condition would I do this, but I simply must have some money. Now please see what you can do for me. My telephone is Kenwood 2490, and if you can come out . . ."

Plaintiff rested upon her assumption that the estate was bankrupt and defendant was distressed financially until some time thereafter when she employed counsel to look into the estate. Investigation revealed the fact that the estate had been appraised as of the value of $26,071.30. This action was brought to recover damages fixed as the value of the note.

Defendant, by her answer, admits that she told plaintiff that she had obtained nothing from the estate for her personal use and that she was indulging in ten cent lunches; but denies that her statements were false and fraudulent, or that they were intended to deceive.

The case went to the jury on conflicting testimony. The verdict is conclusive of all the facts, but defendant assigns as error the ruling of the court admitting in evidence the appraisement, the report of the executrix to the state tax commission, and the order of solvency made by the court when the will was admitted to probate. This order is not in the files, but it was introduced at the trial. Counsel seem to rest their charge of error upon the belief that the issue was whether the estate was in fact worth a sum approximating the amount of the inventory, whereas the issue was whether defendant had falsely misrepresented the fact of solvency. The appraisement which was accepted and returned by her to the state tax commission was competent as a declaration against interest and a rebuttal of her statement that the estate was bankrupt.

But if it were not so, defendant is not prejudiced, for the order of solvency being in itself a judgment of a court of general jurisdiction, was competent to prove, at least *prima facie*, the issue to which it was directed, that is, the solvency of the estate.

It developed on the cross-examination of the plaintiff that a memorandum had been pinned to the note by Burr in his lifetime to the effect that "This note . . . is secured by an assignment of mortgage for $500 with accrued interest, by Charles T. McDonald, said mortgage is due October 30, 1914, and is secured by lot 5, block 5, Central Seattle." The court rejected this offer because the defendant had not pleaded the fact. This is assigned as error, but no prejudice resulted. It was not competent as proof of an assignment in the absence of a showing that the assignment could not be produced. We can hardly hold that defendant has been prejudiced by a rejection of the memorandum when we would hold, as a matter of law,

that the memorandum was incompetent .if it had been admitted over objection.

It is complained that the court erred in instructing the jury that they might find defendant liable if they found that the statements made by her were false and fraudulent, and they further found that plaintiff relying on them did not file a claim against the estate.

This instruction goes to the gravamen of the case. It directs the mind of the jury to the controlling issue, that is, whether the representations were false and fraudulent, and whether, by reason thereof, plaintiff was misled to her damage. The action being for deceit, and not upon contract, the instruction was proper.

The giving of the following instruction is assigned as error:

"You are further instructed that the defendant as executrix of the estate of Arthur S. Burr, if you find from the evidence was negotiating with the plaintiff for the payment of the note signed by said Arthur S. Burr above mentioned within a year after giving notice to creditors, viz., on the 16th day of May, 1914, *it was the defendant's duty and obligation to notify and direct the plaintiff to file a sworn claim against said estate,* she being the executrix of the estate, and if you find from the evidence that the said defendant did so negotiate for the payment of said claim, but failed to so notify and direct the plaintiff to file such claim, then such failure is evidence which you may consider in connection with other evidence in the case that defendant intended to defraud plaintiff out of her said note and claim."

Counsel lays emphasis upon that part of the instruction which for convenience of argument we have italicized. It may be granted that the instruction is inapt in form, but when considered with the first condition, "if you find from the evidence (defendant) was negotiating with the plaintiff for the payment of the note,"

3—101 WASH.

the italicized words mean no more than that a promise to pay coupled with a concealment of the fact that the claim should be presented as a claim against the estate was a circumstance which might be considered with other testimony as evidence of deceit. In the light of the issue and an actual payment upon the note, the instruction does not mean that the executor is under any duty, independent of the facts of the case, to advise the filing of a claim, but rather that he may be held as for deceit if it is shown that his negotiations for payment had gone to the extent of holding out his own promise, altho it may not be binding in law.

It is said that the verdict is excessive. The court instructed the measure of recovery as the amount of the note with interest. Counsel contends that a recovery could not in any event exceed the amount that the estate would have been able to pay, and inasmuch as it is not shown that the assets will exceed the liabilities on final settlement, no recovery can be had. Here again counsel fails to hold fast to the real issue. The contention is based on the assumption that the suit is against the executrix and is to be paid out of the estate. Solvency has a well defined meaning in law: it means an excess of assets over liabilities, the power to pay debts in due course. It is true that the defendant undertook to show that the estate was incumbered, but this did not overcome the *prima facie* case. The burden was on defendant to show, not incumbrances merely, but an actual state of insolvency to defeat plaintiff's case. This she not only did not do, but as we read the record, adroitly avoided doing.

Affirmed.

ELLIS, C. J., HOLCOMB, and MOUNT, JJ., concur.