MILTON v. CRAIG.

1. CONFLICT OF LAWS—WAIVER OF FRAUD—ASSUMPSIT.
   In an action of assumpsit by deceased's sister against his widow wherein fraud and deceit on the part of defendant had been waived, where alleged fraud and deceit, if any, and the action itself arose in another State, the Supreme Court must also look to the law of that State.

2. EXECUTORS AND ADMINISTRATORS—FRAUD—EVIDENCE—CLAIMS AGAINST ESTATES.
   Widow of maker of note who was executrix of his will in State of Washington in which entire estate was left to her held, not guilty of fraud under the facts in failing to make timely presentation of claim of deceased's sister, based on the note, against the estate during its administration pursuant to Washington statutes (Rem. Wash. Rev. Stat. § 1427).

3. MONEY RECEIVED—UNJUST ENRICHMENT—STATUTE OF LIMITATIONS—ACTIVE FRAUD.
   The law of unjust enrichment does not relieve people from the consequences of a statute of limitations of any kind where there has been no active fraud that lulled claimant into inaction.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted June 6, 1945. (Docket No. 20, Calendar No. 42,956.) Decided October 8, 1945.

Assumpsit by Rose Milton against Dora Craig on a note. Judgment for plaintiff. Defendant appeals. Reversed without new trial.

*J. Paul Wait*, for plaintiff.

*Ronald M. Ryan*, for defendant.

BUTZEL, J. In 1887 Robert P. Warmbread, who subsequently changed his surname to Craig, moved

---

The law of the place determines whether there is a duty to act in a particular manner, see Restatement, Conflicts, § 382.

from Sturgis, Michigan, to the State of Washington. In 1891 he visited Michigan and asked his sister Rose Milton, plaintiff, to save her money and let him invest it. From 1891 to 1904, plaintiff sent him various sums, aggregating between $1,000 and $1,070. Craig dealt in real estate and timber lands. He credited plaintiff with additional sums and interest so that on November 1, 1910, there was due her $2,440. He also wrote her of another deal in which her share was $1,145.47. In 1916 he wrote that the amount due her was $5,046.08. In 1935, just before he was to undergo a serious operation, he sent her his note for $8,102.80, dated August 1, 1935. During the year 1924, Craig sent his sister $561.20. He continued to send her a like amount each year up to 1936. She received from him a total of $6,734.40. He sent her no money after 1936. Plaintiff did not know just what investments her brother made for her except that while she was visiting in Washington in 1906, a transaction was discussed with a Mr. Swope at the dinner table in the presence of plaintiff and Dora Craig, defendant, the widow of Robert P. Craig. When plaintiff's brother asked plaintiff if that was satisfactory, she stated that anything he did was satisfactory. Evidently the entire family was uncommunicative as financial dealings between plaintiff and her brother were not mentioned to defendant by either plaintiff or Robert Craig. Plaintiff visited her brother in Seattle in 1906 and 1920 but business matters except in the single instance mentioned were not discussed in defendant's presence. Defendant did not have what plaintiff called "a business head" and she did not care to hear her husband discuss business.

Some time after 1936, Craig became ill and plaintiff did not hear from him. Plaintiff testified that she did not write because she felt "delicate" about doing it. She further stated that she did not intend

to press him for any payment, that she would not have sued her brother; that she was satisfied with the original investment, having received a return of over $6,000; that if her brother had never sent her any more money, she never would have said anything. He died on March 29, 1941. The daughter of defendant sent plaintiff a telegram advising her of the death of defendant's husband, and on April 16, 1941, defendant sent a copy of the obituary published in a Seattle paper. Craig left a will dated April 4, 1938, in which he left the entire estate to his wife, the defendant. She placed the handling of the estate in the hands of an attorney, a personal friend of Mr. Craig. Later another attorney acted in the probate proceedings. Petition for appointment of executor was filed in the superior court of the State of Washington, King county, and defendant was appointed executrix April 7, 1941. The notice to creditors was first published April 12, 1941, and continued to be published for three weeks, the last publication being on April 26, 1941. It is conceded by all the parties that the law of Washington provides that creditors' claims must be presented and filed within six months from the date of the first publication. Rem. Wash. Rev. Stat. § 1477. The time for serving and filing claims in the Craig estate expired at midnight on October 11, 1941. The final account of the executrix was noticed for January 29, 1942, and date of hearing thereof was continued until February 11, 1942, when an order approving the final account of the executrix and a decree of distribution were made. The value of the estate is $20,065.94. After plaintiff received the letter sent her by defendant under date of April 16, 1941, no further correspondence passed between the parties until August 20, 1941, when plaintiff sent a letter to defendant in which

she thanked her for sending the obituary on
April 16, 1941, over four months before. In one
paragraph of the letter she referred to the fact
that she had sent her brother moneys to invest for
her old age; that when he first came back 50 years
ago, she had learned a trade and gave him $150;
that she had sent moneys at various times; that
later on, defendant was present when Craig closed
a deal with a third party and plaintiff did not get
any money but received a note much later; that de-
fendant had access to his papers and must have
found some record of it. She further stated in the
letter.that Craig had not told her all the deals he
was interested in and she had not cared to know;
that she trusted him and asked no questions, but
now that defendant's husband was gone defendant's
financial burden was greatly lightened and she
ought to be able to pay plaintiff some of the overdue
interest; that she had not received interest for
years, and as it was intended for her "old age,"
the time had come when she should have it; that
she was having difficulty on account of the rise in
prices. Plaintiff again wrote defendant on Novem-
ber 12, 1941, stating that she had received no reply
to her previous letter and referred to the work she
had to do to send the money, and she had denied
herself clothes and pleasures in order to send it;
also how hard up Craig had been and how the money
had relieved him. She further stated that she did
not want all of the money back at that time but all
she expected was to get some back interest; that
she was badly in need of funds on account of the
sickness of her husband. Defendant did not reply
to this letter. Plaintiff again waited until the latter
part of December, 1941, when she wrote to a party
she knew who had moved to Seattle and he referred
her to another party, who, in turn, advised plaintiff

to communicate with Mr. Lytel, an attorney in Seattle. He replied that the defendant's estate was being probated but had not been closed. The hearing on the final account had been set for February 11, 1942. She thereupon went to see her present attorney in Sturgis, Michigan, and he immediately wrote to Mr. Lytel who checked the probate records and found the time for filing of claims had expired. Mr. Lytel made no formal appearance in the probate proceedings. He concluded that an appearance would serve no purpose whatsoever because the time had expired for filing claims.

Defendant testified that she had met plaintiff in 1906 and in 1920 when the latter visited in Seattle and in 1909 when defendant visited Michigan. She never read any letters between plaintiff and Mr. Craig; the latter never confided in her; that she knew very little about business and nothing about the laws of the State of Washington concerning the probate proceedings. She did not know about the requirement for notice to creditors and the six months' limitation for filing claims. When she received a letter from plaintiff, she did not think then that plaintiff had any money coming to her and later when she was shown the photostatic copy of the note, she went through her husband's papers quite carefully and could find no record of any such note.

Defendant and her husband owned a 120-acre farm in St. Joseph county, Michigan, as tenants by the entireties. Upon his death she became sole owner. Plaintiff sued out a writ of attachment and a writ was levied on the property. Thereupon defendant entered her appearance in the circuit court for St. Joseph county, Michigan.

But very few letters were exchanged between the parties and particularly not during the last 10 years

of Craig's lifetime. Plaintiff substantially agrees with the foregoing statement of facts except that she calls attention to a few more letters written between the years 1928 and 1940. The letters have no bearing on the case.

Plaintiff claims that defendant as executrix and sole beneficiary under the will is guilty of fraud and deceit in not filing or presenting plaintiff's claim against the estate, and that such failure resulted in an unjust enrichment to herself; that defendant "by her deliberate silence knowingly and intentionally induced plaintiff to forego any further action which she otherwise could have fulfilled."

The judge, who heard the case without a jury, based a judgment for plaintiff on the fact that there was a family relationship and that there was a further trust, that defendant owed a duty to inform her of the probating of the estate and the appointment of commissioners inasmuch as she had notice of the indebtedness, that defendant having failed in the execution of her trust became liable to plaintiff. Plaintiff in her declaration expressly waived "said wrongs of said defendant entitling her to an action on the case for fraud and deceit," and elected to recover in assumpsit.

Inasmuch as the alleged fraud and deceit, if any, and the action itself arose in the State of Washington, we also look to the law of that State. Notwithstanding the fact that the attorney for plaintiff claims that the injustice in the Washington cases is shocking, the statute in regard to the timely filing of claims has been rigidly construed and the provisions of the probate law of Washington relative thereto must be complied with in the strictest sense. *In re Krueger's Estate,* 11 Wash. (2d) 329 (119 Pac. [2d] 312). See, also, notes in 11 A. L. R. 246 and 66 A. L. R. 1415. The State of Washington has no procedure by which an estate can be reopened in

order to present claims. A deposition of an attorney in Seattle was taken and he stated that under the laws of that State, the executrix owed no duty to the creditors. The attorney for plaintiff in Washington testified that under the laws of that State, the executrix is the representative of the deceased. Plaintiff herself stated in her testimony that she did not believe that defendant intentionally defrauded her; she never had made any such claim, and that the allegation in the declaration that defendant intended to defeat and defraud her was not made by her; that she thought that failure to notify her was because of lack of business knowledge on defendant's part.

The Supreme Court of Washington stated in *Parchen* v. *Hauschild,* 159 Wash. 49, 55 (292 Pac. 116), referring to the necessity of strict compliance with the statute in question stated:

"Hardship is bound to result in some instances, whichever rule is followed, but in the long run it would seem that a strict compliance with the statute with no estoppel against its use as a bar is the more safe and sensible rule."

To like effect see *In re Krueger's Estate, supra,* where many other Washington cases holding to this rule are cited. Both parties refer to the case of *Kennedy* v. *Burr,* 101 Wash. 61 (171 Pac. 1022), but that was a case in which plaintiff held a note which was to be presented as a claim against the estate. The court refused to instruct the jury that it was defendant's duty to notify plaintiff to file a sworn claim against the estate, but that this could be taken into consideration with the fact that defendant was negotiating with plaintiff for the payment of the note; that the negotiations having been begun had gone to the extent of holding out defendant's own

promise to pay although it might not be binding in law. The testimony further shows that defendant while executrix paid on the note held by plaintiff and asked plaintiff to wait for the principal as an accommodation. Defendant further stated that she was almost a pauper, asked plaintiff if she would accept $25 a month. At the time that the filing of claims had expired, defendant refused to communicate with plaintiff. The estate had substantial assets. However, in the instant case, there was no act of fraud or promise to pay on the part of defendant who was also executrix. Had there been any act of fraud on the part of defendant, we would be confronted with a different situation. As it is, we find none. Mere silence, possibly due to ignorance, is not fraud under the facts. The law of Washington was plainly set forth on the statute books. The probate proceedings were public. Plaintiff cannot recover. While the law in regard to unjust enrichment has gone far, it never has relieved people from the consequences of a statute of limitations of any kind where there has been no active fraud that lulled the claimant into inaction.

We are constrained to reverse the judgment of the lower court, without a new trial. Costs to defendant.

STARR, C. J., and NORTH, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.